UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRITTANY SIMS, and
BRIANA SIMS,

     Plainitffs,                            Case No:
                                                   Hon.

v.

PREMIER SECURITY SOLUTIONS
COMPANY, INC., a Michigan Corporation,

     Defendant.

---

Greg A. Jones (P75318)
**GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C.**
Attorneys for Plaintiffs
30500 Northwestern Hwy, Ste 425
Farmington Hills, MI 48334
P: (248) 865-0001
F: (248) 865-0002
gjones@gmgmklaw.com

---

## <u>COMPLAINT AND DEMAND FOR TRIAL BY JURY</u>

     Plaintiffs, BRITTANY SIMS and BRIANA SIMS, by and through their attorneys, GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C., state the following for their Complaint against the Defendant:

     1.     This cause of action asserts claims of pervasive and repeated sexual harassment to which Plaintiffs were subject during their respective employment with defendant, as well as unlawful and discriminator retaliation against them when they reported the harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Elliot-Larsen Civil Rights Act, MCL § 37.2101 et seq.

1

## PARTIES

2.     Plaintiff, Brittany Sims ("BRITTANY") is a resident of the City of Detroit, Wayne County, Michigan.

3.     Plaintiff, Briana Sims ("BRIANA") is a resident of the City of Detroit, Wayne County, Michigan.

4.     Plaintiffs are identical twin sisters.

5.     Defendant, Premier Security Solutions Company, Inc. ("PREMIER") is a Michigan Corporation that provides security staffing for commercial customers.

6.     PREMIER's principal place of business is located in the City of Flint, Genesee County, Michigan.

7.     PREMIER regularly conducts business Wayne County, Michigan.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1331 and 1367.

9.     This Court has jurisdiction over Defendant because (a) it was formed under the laws of the State of Michigan, (b) has continuous and systematic operations in the State of Michigan, and (c) at all relevant times had more than 50 employees.

10.    BRITTANY filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 9, 2019 which was within 300 days of the earliest events giving rise to her claims. (Attached as **Exhibit 1)**

11.    The EEOC issued a notification of the right-to-sue to BRITTANY on November 17, 2019. (Attached as **Exhibit 2)**

12.    BRITTANY has filed this complaint within 90 days of receiving the notification of the right-to-sue from the EEOC.

13.    BRIANA filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 9, 2019, which was within 300 days of the earliest events giving rise to her claims. (Attached as **Exhibit 1**)

14.    The EEOC issued a notification of the right-to-sue to BRIANA on November 19, 2019. (Attached as **Exhibit 2**)

15.    BRIANA has filed this complaint within 90 days of receiving the notification of the right-to-sue from the EEOC.

16.    All of the discriminatory and retaliatory employment practices alleged in this Complaint occurred within the State of Michigan.

17.    Venue is proper and convenient in this judicial circuit.

## **FACTS**

18.    On or about March 11, 2019, PREMIER hired BRITTANY as a Security Guard.

19.    On or about March 13, 2019, PREMIER hired BRIANA as a Security Guard as well.

20.    BRITTANY and BRIANA were assigned to patrol and monitor parking lots hear the GM Detroit-Hamtramck Assembly plant, referred to by PREMIER as "Hamtramck-North."

21.    PREMIER assigned BRITTANY and BRIANA shifts that were managed by PREMIER employee, Matthew Hyde ("HYDE").

22.     Both BRITTANY and BRIANA were subject to repeated and pervasive sexual harassment by HYDE.

23.     The harassment included frequent unwelcome comments and conduct of an offensive and sexual nature directed at both BRITTANY and BRIANA.

24.     Based upon HYDE's behavior and comments, BRITTANY and BRIANA both feared that they would be retaliated against by HYDE and PREMIER if they objected to HYDE'S constant harassment.

### Examples of Harassment toward Brittany

25.     For example, Security Guards for PREMIER use their personal vehicles to patrol the locations to which they are assigned.

26.     During her employment, HYDE would frequently make excuses to spend hours at a time in BRITTANY's personal vehicle.

27.     HYDE referred to BRITTANY as his "work wife."

28.     HYDE purchased unsolicited and unwelcome gifts for BRITTANY including personal hygiene items such as a bath bomb and lotion.

29.     HYDE referred to these gifts as "future baby mama gifts."

30.     HYDE made derogatory and sexual comments about BRITTANY'S physical appearance.

31.     On one such occasion, HYDE commented on BRITTANY's appearance to BRIANA. He told BRIANA to tell BRITTANY not to wear the blouse that she had worn to work again because it made him aroused, and that it caused him to "almost jack off" in his car.

32.     HYDE showed BRITTANY a photograph with several different images of male genitalia. Each image was numbered 1 through 10.

33.     In reference to this photograph, HYDE told BRITTANY that he was a "10." Throughout the time that BRITTANY was employed with PREMIER, HYDE would frequently reference himself as a "#10" in reference to his genitals and the explicit photograph.

34.     HYDE also made several sexually harassing comments via text message to BRITTANY's personal cellular telephone.

35.     For example, on April 5, 2019, HYDE forwarded a link to BRITTANY of a video entitled "Panda Ass," which featured a sexually explicit video of a woman in body paint "twerking." HYDE accompanied this link with the message "Is this what I'm missing out on[?]"

36.     On April 8, 2019, HYDE referenced the video again, texting "Watched that panda video today again."

37.     On April 10, 2019 at 3:54 AM, HYDE texted BRITTANY a link to a video entitled "Magic Mike XXL Dance Ending" featuring videos of male dancers stripping erotically. He accompanied the link with the message "Magic Matt style lol."

38.     On April 10, 2019, HYDE texted BRITTANY "Hope u get me a good girl or you gonna be wifey lol" followed by "If not them I'm hitting on you. Hahahahahaha."

39.     After BRITTANY responded "You terrible," HYDE texted "Terrible how" and "Your [sic] fired. Hahaha."

5

40.     On April 11, 2019, BRITTANY and HYDE had the following text message exchange regarding shift assignments after BRITTANY indicated that she forgot to ask another supervisor for a specific shift assignment.

HYDE:          "I guess I cud [sic]" "If your [sic] nice."

BRITTANY:   "Lol so irritating jus [sic] do it"

HYDE:          "When I get there maybe. Hehe"

BRITTANY:   "I don't like you lol"

HYDE:          "[Crying emoji]" "[Dancing Emoji] magic Matt lol"

41.     On April 14, 2019, HYDE texted BRITTANY "How was dinner today" and BRITTANY did not respond. On April 16, 2019, HYDE texted BRITTANY, "Look, when I text twin I expect a text back. That's why you my fav lol. She not part of team bad ass anymore [laughing emojis]"

42.     On April 17, 2019, HYDE was complaining about his duties in a text conversation and texted BRITTANY "I can't sit here and flirt. Wtf"

43.     On April 19, 2019, HYDE texted BRITTANY "I gave Eric your number and said you got the hots for him lol"

44.     On April 23, 2019, HYDE texted BRITTANY a meme image with the words "That moment when you find out he likes black girls" with the accompanying messages "You know it," "I'm already there," and "U and twin got me fucked up. Hahahahahahaha."

45.     On April 26, 2019, HYDE texted BRITTANY "Since u [sic] my future baby momma, what u [sic] want for mothers day lol jk jk"

46.    On April 30, 2019, HYDE texted BRITTANY "Just remember the number 10 when you see me hahahaha." This message was referring to the above-referenced sexually explicit collage.

47.    On May 2, 2019, HYDE initiated the following text message exchange with BRITTANY:

> HYDE:    "I was hoping you wud [sic] get out and I accidentally brush you. Hahaha."
>
> BRITTANY:  "Your sick lol"
>
> HYDE:    "Shut up. I'm a man. You a wifey." "My Texas wife lol" "Don't [sic] lie. You like my flirting. I got no game but I'm trying"

48.    On May 4, 2019, HYDE texted BRITTANY "If I'm gonna push up it's gonna be with #10 lol" again referencing the explicit collage and his genitalia.

49.    Later on May 4, 2019, HYDE texted BRITTANY the following:

> HYDE:    "I cud [sic] have got gas for you. Sugar daddy lol"
>
> BRITTANY:  "Lmao shut up and drive home safe"
>
> HYDE:    "Yea yea." "I'll stop crushing on you for a week or so lol"
>
> BRITTANY:  "Lmao you want [sic] last [laughing emoji]"
>
> HYDE:    "Your [sic] fault. Become ugly and I'll stop lol" "I'm just trying to wife ya."

50.    On May 4, 2019, Hyde texted BRITANY indicating that he had been reprimanded by a PREMIER manager. He texted the following messages:

> HYDE:    "I need to be more professional at work now. No more flirting with you." "[Crying emoji]"
>
> BRITTANY:  "I guess be boring like the rest of them

HYDE:          "Yup. Said I'm too lax and need to start getting my shift back in order. Guess Its time for me to be a dick." "Guess I can't send this [peach emoji]"

51.    During the same text conversation, HYDE texted BRITTANY the following:

HYDE:          "Your fault." "I like black girls with bbooty [sic] and boom. You fit."

BRITTANY:   "Of course I fit." "I'm freezing."

HYDE:          "U lucky I'm not younger."

BRITTANY"   "Why you say that"

HYDE:          "I wud of swept you up. I ain't like other cats. Lol"

52.    In order to discourage HYDE from continuously harassing her, BRITTANY would tell him that she was sick. On May 5, 2019, she told HYDE that she was not feeling well. HYDE texted the following:

HYDE:          "How you feeling"

BRITTANY:   "Better thanks for asking"

HYDE:          "If you need to come down and rub your booty. Tummy I can lol"

BRITTANY:   "Lmao I swear you get on my nerves dude"

53.    On May 7, 2019 HYDE texted BRITTANY "So if I get a cool car, you can go for a ride and o [sic] can show you off along with the car lol," and later texted "Leave your door unlocked so I can come nap lol"

54.    On May 12, 2019 HYDE texted BRITTANY "You in bed. Makes me wanna cuddle them yams lol."

55.    On May 12, 2019, BRITTANY claimed that she had Pink Eye to discourage HYDE from sitting in her vehicle or harassing her further. HYDE engaged in the following text message conversation:

8

HYDE:       "Mom made cherry/blueberry cheesecake"

BRITTANY:   "I wish I could it's some today was my cheat day"

HYDE:       "I can bring you some down."

BRITTANY:   "I ate enough I'm not tryna be a BBw"

HYDE:       "Ok. I don't care what you look like. Still be my future wifey. Haha."

BRITTANY:   "I care what I look like I don't wanna be fat this summer"

HYDE:       "You are not fat, dam girl. You a 10 already. Guys wud cut off a leg to be with you." "Shit. I'm trying hahahahaha"

BRITTANY:   "Lol you so silly I'm tryna stay fine you keep tryna feed me."

HYDE:       "You are fine. Dam. Lol" "I'd come chill but its raining and don't want to get wet"

BRITTANY:   "Raining to hard"

HYDE:       "You can chill in my truck. Hahahahaha jk jk"

BRITTANY:   "Not a good idea I have pink eye duhh"

HYDE:       "Oh yea. You have eye aids lol"

BRITTANY:   "Not funny"

56.     On May 13, 2019, HYDE texted BRITTANY at 5:07AM, "Wake up sunshine lol." She responded "Was never sleep" to which he responded "I know. I was flirting thru text."

57.     Later in the conversation, HYDE texted "I'm old. That was flirting." "I can't just be honest and tell a girl, hey I wanna eat your ass. That's rude."

58.     On May 24, 2019, HYDE texted BRITTANY "I guess people were calling asking why you got overtime and nobody else has hours. Hahaha. Because her boss wants to marry her. Duh. Hahaha."

59.     On June 7, 2019, HYDE texted BRITTANY "Since I'm not your boss now you can be my ole lady lol." "Haha. I quit."

## Examples of Harassment Toward Briana

60.     Like he did with BRITTANY, HYDE would frequently make excuses to spend hours at a time sitting in BRIANA's personal vehicle while she was working.

61.     HYDE also referred to BRIANA as his "work wife."

62.     HYDE would threaten BRIANA by telling her that he was going to "divorce" her while working.

63.     HYDE made derogatory and sexual comments about BRIANA's physical appearance.

64.     HYDE made references to BRIANA's buttocks by calling them "yams."

65.     HYDE referenced BRIANA's outfit and told her that he was thinking about her red pants while masturbating.

66.     HYDE would also frequently tell BRIANA that he likes black women and has dated black women in the past.

67.     One morning during BRIANA's employment with PREMIER, HYDE remained on a PREMIER job site after his shift had ended. He used this opportunity to spend time at BRIANA's vehicle. HYDE showed BRIANA a photograph on his phone. HYDE then scrolled past the photograph to reveal a photograph of his penis. HYDE pretended to act embarrassed, but asked BRIANA if she wanted to see the photo.

68.     HYDE would also scroll through the camera roll on his phone while sitting with BRIANA and comment to himself, saying "that's a dick pic" and "another dick pick."

69.     It was apparent to BRIANA that HYDE was attempting to get her to ask to see the explicit photos.

70.     On another occasion, HYDE zoomed in on a photograph of female genitalia that he claimed was sent by another PREMIER employee.

71.     HYDE also showed BRIANA the same collage of numbered male genitalia referenced above.

72.     HYDE also told BRIANA that he was a "10." Throughout the time that BRIANA was employed with PREMIER, HYDE would frequently reference himself as a "#10" in reference to his genitals and this explicit photograph.

73.     HYDE also made several sexually harassing comments via text message to BRIANA's personal cellular telephone.

74.     On May 14, 2019, HYDE texted BRIANA "Sucks on who you like in life. Never ever thought I wud [sic] be really good friends with fine ass twins." BRIANA did not respond.

75.     An hour and a half later, HYDE texted BRIANA "Just watched a good movie. Dam I love me some black k ladies." BRIANA did not respond.

76.     On May 16, 2019, HYDE texted BRIANA "I may have to divorce twin and marry you. Hahaha."

77.     On May 16, 2019, Hyde texted BRIANA "You don't [sic] choose babe, if I choose you it's over. Big papi take care of it. Hahaha."

**Reporting of the Harassment and Premier's Refusal to Take Remedial Measures**

78.     BRITTANY and BRIANA both reported HYDE's harassment to supervisors at PREMIER, and asked to be assigned to different shifts because of his harassment.

11

79.    In or about April 2019, BRITTANY had a discussion with a shift manager for PREMIER, Todd Pillsbury ("PILLSBURY").

80.    During this conversation, PILLSBURY came to BRITTANY's car and she told him that HYDE was harassing her and BRIANA and that she was not comfortable working on his shift.

81.    BRITTANY later raised the issue of HYDE's harassment to PILLSBURY again. She asked to be moved from HYDE's shift permanently.

82.    PILLSBURY asked why she wanted to change shifts. BRITTANY informed PILLSBURY that HYDE would sit in her car for hours and often fall asleep. She told PILLSBURY that HYDE was creepy and that every time she reported to HYDE that she wanted to move to another shift, he would threaten to fire her.

83.    PILLSBURY told BRITTANY in response that HYDE was "on his way out the door" and that he would be fired soon for other reasons. PILLSBURY asked BRITTANY to wait and deal with the harassment in the interim.

84.    Near the end of April or beginning of May 2019, PILLSBURY and BRITTANY had another discussion. During this conversation, PILLSBURY informed BRITTANY that hours were going to be cut because one of the lots they were assigned to was going to shut down. He asked BRITTANY if she wanted to come to his shift, and told her that he she didn't, she would be stuck on third shift with her "favorite person," referencing HYDE.

85.    PILLSBURY asked BRITANY why she didn't confront HYDE when he was harassing her. BRITTANY informed him that she feared retaliation for rejecting his

advances, and informed him about how she felt like she needed to lie to HYDE about ailments such as pink eye to discourage his harassment.

86.    BRITTANY also informed PILLSBURY about the text message she had received from HYDE where he told her, "I can't just be honest and tell a girl, hey I wanna eat your ass." PILLSBURY responded that HYDE was getting ballsy, but did not take further action to prevent HYDE's harassment.

87.    PILLSBURY did not initially report these complaints to upper management or human resources.

88.    In or around late March 2019, BRIANA reported HYDE's harassment to a PREMIER shift manager, Richard Benson ("BENSON").

89.    At that time, BRIANA was working at the Detroit-Hamtramck site. BENSON drove up next to her vehicle to have a discussion and asked her how things were going. BRIANA asked if she could move from HYDE's shift to first shift.

90.    BENSON asked why BRIANA wanted to move shifts. BRIANA informed him that HYDE made her feel uncomfortable. She further explained that HYDE said inappropriate things to her and called her his "work wife." BRIANA told BENSON that he HYDE would call her when she was not at work and sent her text messages at home. \

91.    BENSON told BRIANA that PREMIER would be opening a new shift shortly and she would have the opportunity to not work with HYDE.

92.    Approximately two weeks later, BRIANA had another conversation with BENSON about HYDE's harassment. BENSON approached her at PREMIER's "Borman" job site and told her that he had a first shift available. He asked BRIANA how things were going and she informed him that HYDE was still harassing her.

13

93.     BRIANA told BENSON that HYDE continued to sit in her car for inappropriate amounts of time and that she was afraid to say anything to him because he was her supervisor.

94.     BENSON again told BRIANA to wait for another shift to open up instead of reporting HYDE's behavior or taking prompt remedial action.

95.     BRIANA again reported HYDE's behavior to BENSON after he showed her the picture of his penis on his cell phone.

96.     At the time of this conversation, BRIANA was working on the first shift for PREMIER. BENSON pulled up to her car and asked her how she was doing. BRIANA responded by telling him that there was still a problem even when she was not on HYDE's shift.

97.     BRIANA told BENSON that HYDE had stayed after his shift and that he had showed her his penis on his cell phone. BENSON asked if anyone else could back up her claims.

98.     BRIANA also reported this incident to PREMIER employee, Eric Ellis.

99.     After BRIANA reported that HYDE had shown her the explicit photograph, BENSON again asked her to remain patient, and told her that HYDE was going to be fired soon for stealing hours.

100.    BRIANA discussed HYDE's harassment with a co-worker named Kenny. She told Kenny that HYDE's behavior was getting creepy and that it appeared as though he was getting increasingly obsessed.

101.    HYDE's harassment of BRITTANY and BRIANA was pervasive enough that it was generally known throughout the company.

102.   Other employees perceived HYDE's harassing behavior as favoritism, causing hostility between them and BRITTANY and BRIANA.

103.   On May 24, 2019, a PREMIER employee verbally assaulted BRIANA and began an altercation. This employee used racially demeaning language during this altercation.

104.   BRITTANY was not directly involved in the altercation.

105.   PREMIER suspended both BRITTANY and BRIANA to "investigate" the May 24, 2019 incident.

106.   The PREMIER employee involved in the altercation with BRIANA was allowed to continue working during this investigation.

107.   On June 12, 2019, BRITTANY sent PILLSBURY a text message asking if she was fired because she was not put on the schedule.

108.   PILLSBURY responded "No you are not fired. I just got off the phone with my boss and confirmed that. However, they do not want to continue Breanna's [sic] employment. You weren't on the schedule because of them Investigating the incident last weekend."

109.   After, PILLSBURY called BRIANA to inform her that she was terminated as a result of the "investigation."

110.   BRIANA objected to the termination. She questioned PILLSBURY as to why the other employee involved in the incident was not being discipline, and noted that HYDE had not faced any discipline despite BRITTANY and BRIANA's reports of sexual harassment.

111.   As a result of this conversation, PILLSBURY met with BRITTANY and BRIANA on June 13, 2019.

112.   During this meeting, BRITTANY explained the details of HYDE's harassment and provided text message evidence confirming the same.

113.   BRIANA also reiterated the harassment she had experienced by HYDE and provided text messages.

114.   For the first time, on June 13, 2019, PILLSBURY generated a report finding that HYDE had engaged inappropriately, finding that "Matt's actions placed Premier Security in a liable position."

**Retaliation for Reporting Sexual Harassment**

115.   Thereafter, PREMIER initially allowed both BRITTANY and BRIANA to return to their jobs.

116.   However, within weeks, PREMIER began dramatically reducing BRITTANY and BRIANA's scheduled hours.

117.   By the beginning of July 2019, BRITTANY and BRIANA were completely removed from PREMIER's schedule.

118.   BRITTANY and BRIANA both attempted to sign up for shifts that were posted through PREMIER's scheduling application. Both BRITTANY and BRIANA were rejected from signing up for the shifts.

119.   During this time, while BRITTANY and BRIANA were being rejected for shifts, PREMIER hired additional employees.

120.   In June 2019, BRITTANY requested additional hours from PILLSBURY.

121. On June 23, 2019, BRITTANY sent PILLSBURY a screenshot showing that she had received an email that indicated there were open shifts available. PILLSBURY told BRITTANY that the email was wrong.

122. On June 26, 2019, BRIANA sent PILLSBURY a text message stating "Hey Todd I had a shift for today for 2nd shift but it disappeared on the schedule just wanted to make sure." PILLSBURY told her she was not on the schedule.

123. On July 9, 2019 BRITTANY and BRIANNA filed charges of discrimination with the EEOC.

124. On July 12, 2019, Briana texted PILLSBURY a message stating "The app is not giving me an option to clock in." He did not respond.

125. BRIANA then followed up and stated "Do I leave or stay?" Again, he did not respond.

126. BRIANA's last shift with PREMIER was July 12, 2019.

127. BRITTANY's last shift with PREMIER was July 13, 2019.

128. Neither BRITTANY nor BRIANA have been offered any shifts with PREMIER since their last date of work.

129. BRITTANY and BRIANA were both effectively terminated from their positions with PREMIER in retaliation for objecting to HYDE's harassment, reporting HYDE's harassment to PREMIER management, and/or reporting HYDE's harassment to the EEOC.

17

## COUNT I – VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964

*Hostile Work Environment – Brittany Sims*

130.    Plaintiff realleges and incorporates the allegations of the preceding paragraphs as though fully set forth herein.

131.    At all relevant times, there was in effect a federal statute, the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, which provides in relevant part:

> It shall be an unlawful employment practice for an employer –
> (1) to fail or refuse to hire or discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's… sex…; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's…sex…

42 U.S.C. § 2000e-2(a).

132.    At all times relevant, BRITTANY was an employee of PREMIER, covered by and within the meaning of Title VII.

133.    At all times relevant, PREMIER was an employer, covered by and within the meaning of Title VII.

134.    During BRITTANY's employment with PREMIER, she was subjected to acts of gender discrimination by HYDE, her direct supervisor.

135.    BRITTANY was subjected to unwelcome verbal and physical conduct due to her sex.

136.    The unwelcome conduct complained of was based on BRITTANY's sex.

18

137.    The unwelcome conduct affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with BRITTANY's work performance and/or creating an intimidating, hostile, or offensive work environment.

138.    The harassment was committed by HYDE, supervisory personnel, who knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

139.    The harassment was known or should have been known by PREMIER, who failed to take immediate and appropriate corrective action.

140.    As a direct and proximate result of PREMIER's unlawful violations of BRITTANY's civil rights, she has suffered economic and non-economic damages, including but not limited to, loss of employment and future employment and career opportunities, the loss of past and future employment and income benefits, physical pain and suffering, mental anguish, emotional distress, extreme humiliation, outrage, and the loss of enjoyment of the ordinary pleasures of life.

## COUNT II – VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964

*Quid Pro Quo Harassment – Brittany Sims*

141.    Plaintiff realleges and incorporates the allegations of the preceding paragraphs as though fully set forth herein.

142.    During the course of her employment with PREMIER, BRITTANY was repeatedly subject to unwelcome sexual advances by HYDE, her supervisor, including but not limited comments about her appearance and sexual comments as more fully described above.

143.    The unwelcome sexual conversations, advances and conduct were based on BRITTANY's sex and had the purpose and/or effect of substantially interfering with her employment and/or creating an intimidating, hostile, and offensive work environment.

144.    HYDE explicitly and/or implicitly made BRITTANY's submission to his unwanted sexual conduct a term or condition to continue employment.

145.    As a direct result of BRITTANY's opposition to the hostile and offensive environment created by HYDE, PREMIER effectively terminated BRITTANY by no longer placing her on the schedule or allowing her to sign up for shifts.

146.    As a direct and proximate result of PREMIER's unlawful violations of BRITTANY's civil rights, she has suffered economic and non-economic damages, including but not limited to, loss of employment and future employment and career opportunities, the loss of past and future employment and income benefits, physical pain and suffering, mental anguish, emotional distress, extreme humiliation, outrage, and the loss of enjoyment of the ordinary pleasures of life.

## COUNT III – VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1694

*Retaliation – Brittany Sims*

147.    Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

148.    BRITTANY made complaints to PREMIER personnel regarding the sex-based discriminatory practices she experienced.

149.    BRITTANY made complaints to the EEOC regarding the sex-based discriminatory practices she experiences.

150.   BRITTANY's reports of PREMIER's discriminatory and/or illegal practices was a protected activity under Title VII of the Civil Rights Act of 1964, as amended.

151.   PREMIER retaliated against BRITTANY for reporting HYDE and PREMIER's discriminatory and/or illegal practices.

152.   PREMIER's actions were willful, intentional, and/or made in reckless disregard of BRITTANY's rights and sensibilities.

153.   As a direct and proximate result of PREMIER's unlawful violations of BRITTANY's civil rights, she has suffered economic and non-economic damages, including but not limited to, loss of employment and future employment and career opportunities, the loss of past and future employment and income benefits, physical pain and suffering, mental anguish, emotional distress, extreme humiliation, outrage, and the loss of enjoyment of the ordinary pleasures of life.

## <u>COUNT IV – VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964</u>

*Disparate Treatment – Brittany Sims*

154.   Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

155.   PREMIER is vicariously liable for the violation of BRITTANY's Title VII rights by HYDE under the doctrine of *respondeat superior*.

156.   BRITTANY's sex was at least one factor that made a difference in PREMIER's treatment of her.

157.   PREMIER, through its agents, representatives, and employees was predisposed to discriminate on the basis of sex and acted in accordance with that predisposition.

158.    PREMIER, through its agents, representatives, and employees, treated BRITTANY differently from similarly situated employees in the terms and conditions of employment, based on unlawful consideration of sex.

159.    PREMIER's actions were willful, intentional, and/or made in reckless disregard of Plaintiff's rights and sensibilities.

160.    As a direct and proximate result of PREMIER's unlawful violations of BRITTANY's civil rights, she has suffered economic and non-economic damages, including but not limited to, loss of employment and future employment and career opportunities, the loss of past and future employment and income benefits, physical pain and suffering, mental anguish, emotional distress, extreme humiliation, outrage, and the loss of enjoyment of the ordinary pleasures of life.

## COUNT V – VIOLATION OF MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT

*Hostile Work Environment – Brittany Sims*

161.    Plaintiff realleges and incorporates the allegations of the preceding paragraphs as though more fully set forth herein.

162.    At all material times, BRITTANY was an employee, covered by and within the meaning of the Michigan Elliot-Larsen Civil Rights Act, MCL 37.2101 et seq.

163.    At all material times, PREMIER as an employer, covered by and within the meaning of the Michigan Elliot-Larsen Civil Rights Act, MCL 37.2101 et seq.

164.    BRITTANY was sexually harassed by PREMIER's agents and employees throughout the course of her employment

165.   The sexual harassment included, but is not limited to, unwelcome comments and conduct of an offensive and sexual nature directed at her and the creation of a hostile work environment.

166.   The actions of PREMIER and its agents, representatives and employees were intentional.

167.   The conduct of PREMIER's agents and employees in sexually harassing BRITTANY constitutes sexual discrimination in violation of MCL 37.2101 et seq.

168.   As a direct and proximate result of PREMIER's unlawful violations of BRITTANY's civil rights, she has suffered economic and non-economic damages, including but not limited to, loss of employment and future employment and career opportunities, the loss of past and future employment and income benefits, physical pain and suffering, mental anguish, emotional distress, extreme humiliation, outrage, and the loss of enjoyment of the ordinary pleasures of life.

## <u>COUNT VI – VIOLATION OF MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT</u>

*Quid Pro Quo – Brittany Sims*

169.   Plaintiff realleges and incorporates the allegations of the preceding paragraphs as though more fully set forth herein.

170.   BRITTANY was sexually harassed by PREMIER's agents and employees throughout the course of her employment

171.   At all times relevant, HYDE was BRITTANY's direct supervisor at PREMIER.

172.   HYDE explicitly and/or implicitly made BRITTANY's submission to his unwanted sexual conduct a term or condition to continue employment violation of the Elliot-Larsen Civil Rights Act, MCL 37.2101 et seq.

173.   As a direct result of BRITTANY's opposition to the hostile and offensive environment created by HYDE, PREMIER effectively terminated BRITTANY by no longer placing her on the schedule or allowing her to sign up for shifts in violation of the Elliot-Larsen Civil Rights Act, MCL 37.2101 et seq.

174.   As a direct and proximate result of PREMIER's unlawful violations of BRITTANY's civil rights, she has suffered economic and non-economic damages, including but not limited to, loss of employment and future employment and career opportunities, the loss of past and future employment and income benefits, physical pain and suffering, mental anguish, emotional distress, extreme humiliation, outrage, and the loss of enjoyment of the ordinary pleasures of life.

## COUNT VII – VIOLATION OF MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT

### *Retaliation – Brittany Sims*

175.   Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs as though more fully set forth herein.

176.   BRITTANY's filing of a Charge of Discrimination with the EEOC and concurrently the Michigan Department of Civil Rights constitutes activity protected under the Michigan Elliot-Larsen Civil Rights Act, MCL 37.2101 et. seq.

177.   BRITTANY's reports of sexual harassment to PREMIER and its agents, representatives, and employees constitutes activity protected under the Michigan Elliot-Larsen Civil Rights Act, MCL 37.2101 et. seq.

178.   PREMIER and its agents have retaliated against BRITTANY for engaging in activity protected under the Michigan Elliot-Larsen Civil Rights Act and for opposing violations of the Elliot-Larsen Civil Rights Act in violation of the Act.

179.   As a direct and proximate result of PREMIER's unlawful violations of BRITTANY's civil rights, she has suffered economic and non-economic damages, including but not limited to, loss of employment and future employment and career opportunities, the loss of past and future employment and income benefits, physical pain and suffering, mental anguish, emotional distress, extreme humiliation, outrage, and the loss of enjoyment of the ordinary pleasures of life.

### **COUNT VIII – VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964**

*Hostile Work Environment – Briana Sims*

180.   Plaintiff realleges and incorporates the allegations of the preceding paragraphs as though fully set forth herein.

181.   At all relevant times, there was in effect a federal statute, the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, which provides in relevant part:

> It shall be an unlawful employment practice for an employer –
> (1) to fail or refuse to hire or discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's… sex…; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's…sex…

42 U.S.C. § 2000e-2(a).

182.   At all times relevant, BRIANA was an employee of PREMIER, covered by and within the meaning of Title VII.

183.   At all times relevant, PREMIER was an employer, covered by and within the meaning of Title VII.

184.   During BRIANA's employment with PREMIER, she was subjected to acts of gender discrimination by HYDE, her direct supervisor.

185.   BRIANA was subjected to unwelcome verbal and physical conduct due to her sex.

186.   The unwelcome conduct complained of was based on BRIANA's sex.

187.   The unwelcome conduct affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with BRIANA's work performance and/or creating an intimidating, hostile, or offensive work environment.

188.   The harassment was committed by HYDE, supervisory personnel, who knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

189.   The harassment was known or should have been known by PREMIER, who failed to take immediate and appropriate corrective action.

190.   As a direct and proximate result of PREMIER's unlawful violations of BRITTANY's civil rights, she has suffered economic and non-economic damages, including but not limited to, loss of employment and future employment and career opportunities, the loss of past and future employment and income benefits, physical pain and suffering, mental anguish, emotional distress, extreme humiliation, outrage, and the loss of enjoyment of the ordinary pleasures of life.

## COUNT IX – VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964

*Quid Pro Quo Harassment – Briana Sims*

191.   Plaintiff realleges and incorporates the allegations of the preceding paragraphs as though fully set forth herein.

192.   During the course of her employment with PREMIER, BRIANA was repeatedly subject to unwelcome sexual advances by HYDE, her supervisor, including but not limited comments about her appearance and sexual comments as more fully described above.

193.   The unwelcome sexual conversations, advances and conduct were based on BRIANA's sex and had the purpose and/or effect of substantially interfering with her employment and/or creating an intimidating, hostile, and offensive work environment.

194.   HYDE explicitly and/or implicitly made BRIANA's submission to his unwanted sexual conduct a term or condition to continue employment.

195.   As a direct result of BRIANA's opposition to the hostile and offensive environment created by HYDE, PREMIER effectively terminated BRIANA by no longer placing her on the schedule or allowing her to sign up for shifts.

196.   As a direct and proximate result of PREMIER's unlawful violations of BRIANA's civil rights, she has suffered economic and non-economic damages, including but not limited to, loss of employment and future employment and career opportunities, the loss of past and future employment and income benefits, physical pain and suffering, mental anguish, emotional distress, extreme humiliation, outrage, and the loss of enjoyment of the ordinary pleasures of life.

## COUNT X – VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1694

### *Retaliation – Briana Sims*

197.   Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

198.   BRIANA made complaints to PREMIER personnel regarding the sex-based discriminatory practices she experienced.

199.   BRIANA made complaints to the EEOC regarding the sex-based discriminatory practices she experiences.

200.   BRIANA's reports of PREMIER's discriminatory and/or illegal practices was a protected activity under Title VII of the Civil Rights Act of 1964, as amended.

201.   PREMIER retaliated against BRIANA for reporting HYDE and PREMIER's discriminatory and/or illegal practices.

202.   PREMIER's actions were willful, intentional, and/or made in reckless disregard of BRIANA's rights and sensibilities.

203.   As a direct and proximate result of PREMIER's unlawful violations of BRIANA's civil rights, she has suffered economic and non-economic damages, including but not limited to, loss of employment and future employment and career opportunities, the loss of past and future employment and income benefits, physical pain and suffering, mental anguish, emotional distress, extreme humiliation, outrage, and the loss of enjoyment of the ordinary pleasures of life.

## COUNT XI – VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964

*Disparate Treatment – Briana Sims*

204.    Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

205.    PREMIER is vicariously liable for the violation of BRIANA's Title VII rights by HYDE under the doctrine of *respondeat superior*.

206.    BRIANA's sex was at least one factor that made a difference in PREMIER's treatment of her.

207.    PREMIER, through its agents, representatives, and employees was predisposed to discriminate on the basis of sex and acted in accordance with that predisposition.

208.    PREMIER, through its agents, representatives, and employees, treated BRIANA differently from similarly situated employees in the terms and conditions of employment, based on unlawful consideration of sex.

209.    PREMIER's actions were willful, intentional, and/or made in reckless disregard of Plaintiff's rights and sensibilities.

210.    As a direct and proximate result of PREMIER's unlawful violations of BRIANA's civil rights, she has suffered economic and non-economic damages, including but not limited to, loss of employment and future employment and career opportunities, the loss of past and future employment and income benefits, physical pain and suffering, mental anguish, emotional distress, extreme humiliation, outrage, and the loss of enjoyment of the ordinary pleasures of life.

## COUNT XII – VIOLATION OF MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT

*Hostile Work Environment – Briana Sims*

211.    Plaintiff realleges and incorporates the allegations of the preceding paragraphs as though more fully set forth herein.

212.    At all material times, BRIANA was an employee, covered by and within the meaning of the Michigan Elliot-Larsen Civil Rights Act, MCL 37.2101 et seq.

213.    At all material times, PREMIER as an employer, covered by and within the meaning of the Michigan Elliot-Larsen Civil Rights Act, MCL 37.2101 et seq.

214.    BRIANA was sexually harassed by PREMIER's agents and employees throughout the course of her employment

215.    The sexual harassment included, but is not limited to, unwelcome comments and conduct of an offensive and sexual nature directed at her and the creation of a hostile work environment.

216.    The actions of PREMIER and its agents, representatives and employees were intentional.

217.    The conduct of PREMIER's agents and employees in sexually harassing BRIANA constitutes sexual discrimination in violation of MCL 37.2101 et seq.

218.    As a direct and proximate result of PREMIER's unlawful violations of BRIANA's civil rights, she has suffered economic and non-economic damages, including but not limited to, loss of employment and future employment and career opportunities, the loss of past and future employment and income benefits, physical pain and suffering, mental anguish, emotional distress, extreme humiliation, outrage, and the loss of enjoyment of the ordinary pleasures of life.

## COUNT XIII – VIOLATION OF MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT

*Quid Pro Quo – Briana Sims*

219.    Plaintiff realleges and incorporates the allegations of the preceding paragraphs as though more fully set forth herein.

220.    BRIANA was sexually harassed by PREMIER's agents and employees throughout the course of her employment

221.    At all times relevant, HYDE was BRIANA's direct supervisor at PREMIER.

222.    HYDE explicitly and/or implicitly made BRIANA's submission to his unwanted sexual conduct a term or condition to continue employment violation of the Elliot-Larsen Civil Rights Act, MCL 37.2101 et seq.

223.    As a direct result of BRIANA's opposition to the hostile and offensive environment created by HYDE, PREMIER effectively terminated BRIANA by no longer placing her on the schedule or allowing her to sign up for shifts in violation of the Elliot-Larsen Civil Rights Act, MCL 37.2101 et seq.

224.    As a direct and proximate result of PREMIER's unlawful violations of BRIANA's civil rights, she has suffered economic and non-economic damages, including but not limited to, loss of employment and future employment and career opportunities, the loss of past and future employment and income benefits, physical pain and suffering, mental anguish, emotional distress, extreme humiliation, outrage, and the loss of enjoyment of the ordinary pleasures of life.

## COUNT XIV – VIOLATION OF MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT

*Retaliation – Briana Sims*

225.   Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs as though more fully set forth herein.

226.   BRIANA's filing of a Charge of Discrimination with the EEOC and concurrently the Michigan Department of Civil Rights constitutes activity protected under the Michigan Elliot-Larsen Civil Rights Act, MCL 37.2101 et. seq.

227.   BRIANA's reports of sexual harassment to PREMIER and its agents, representatives, and employees constitutes activity protected under the Michigan Elliot-Larsen Civil Rights Act, MCL 37.2101 et. seq.

228.   PREMIER and its agents have retaliated against BRIANA for engaging in activity protected under the Michigan Elliot-Larsen Civil Rights Act and for opposing violations of the Elliot-Larsen Civil Rights Act in violation of the Act.

229.   As a direct and proximate result of PREMIER's unlawful violations of BRIANA's civil rights, she has suffered economic and non-economic damages, including but not limited to, loss of employment and future employment and career opportunities, the loss of past and future employment and income benefits, physical pain and suffering, mental anguish, emotional distress, extreme humiliation, outrage, and the loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiffs BRITTANY SIMS and BRIANA SIMS respectfully request this Honorable Court to enter a judgment in their favor, and against Defendant for (1) Compensatory damages in an amount to be determined by the jury, (2) exemplary and/or

punitive damages, and (3) interest and the costs of litigation, including but not limited to reasonable attorney fees and witness fees.

Respectfully submitted,

GASIOREK, MORGAN, GRECO,
McCAULEY & KOTZIAN, P.C.,

_____
Greg Jones (P75318)
Attorneys for Plaintiff
30500 Northwestern Hwy, Ste 425
Farmington Hills, MI 48334
(248) 865-0001
gjones@gmgmklaw.com

Dated:  February 17, 2020

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs, BRITTANY SIMS and BRIANA SIMS, by and through their attorneys,

GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C., hereby demand a trial

by jury in this cause.

Respectfully submitted,

GASIOREK, MORGAN, GRECO,
McCAULEY & KOTZIAN, P.C.,

_____
Greg Jones (P75318)
Attorneys for Plaintiff
30500 Northwestern Hwy, Ste 425
Farmington Hills, MI 48334
(248) 865-0001
Dated:  February 17, 2020          gjones@gmgmklaw.com

34